IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Marty Fosberry, )<br>   )<br>   Plaintiff/Counterdefendant, )<br>   )<br>v. )<br>   )<br>   )<br>Coyle Business Products, Inc., )<br>   )<br>   Defendant/Counterclaimant. )<br>_____ ) | Civil Action No.2:10-cv-00799-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on Defendant/Counterclaimant Coyle Business Products, Inc.'s ("Defendant," "Counterclaimant," or "Coyle") Motion for Default Judgment. (Dkt. No. 54.) The undersigned held a hearing on this motion on March 26, 2012. (See Dkt. No. 62.) Thomas Tisdale, Jr., Esquire, Attorney for Coyle, appeared at the hearing along with Gregory T. Coyle, president of Coyle Business Products, Inc. Although Marty Fosberry received notice of the hearing, he did not appear. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

**PROCEDURAL FACTS**

Marty Fosberry ("Plaintiff," "Counterdefendant," or "Fosberry") brought action against Coyle on March 30, 2010. On July 7, 2010, Defendant amended its Answer to include Counterclaims. (See Dkt. No. 17.) Fosberry filed an Answer to the Counterclaims on July 28, 2010. (See Dkt. No. 19.) On November 17, 2010, Jarrell Wigger, Esquire, counsel for Fosberry, moved to withdraw. (Dkt. No. 25.) That motion was granted, and the Honorable Richard Gergel entered an Order stating, inter alia, "Failure on the part of the Plaintiff to inform this Court, within thirty (30) days, as to the name of his new counsel or if he intends to proceed self-represented may result in dismissal of this action pursuant to Rule 41(b),

Fed. R. Civ. P." (Dkt. No. 26.) On December 29, 2010, Judge Gergel issued an order giving Plaintiff an additional fifteen days to inform the Court "if Plaintiff intends to proceed with this action." (Dkt. No. 30.) The Order dated December 29, 2010 further stated, "Failure to do so will result in this matter being dismissed for failure to prosecute under Rule 41(b), Fed. R. Civ. P." (Id.)

On January 24, 2011, Judge Gergel dismissed Plaintiff's action, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute. (Dkt. No. 35.) Coyle's counterclaims remain.

On March 31, 2011, Coyle filed a Motion for Sanctions. (Dkt. No. 46.) Coyle stated that it was seeking an Order imposing sanctions including–but not limited to–dismissal of Fosberry's Answer to Coyle's counterclaim on the ground that Fosberry failed to obey the Court's Order of February 3, 2011, which ordered him to respond to interrogatories and requests to produce. (Dkt. No. 46 at 1.) Coyle stated that it requested an Order striking Fosberry's Answer and a hearing on the amount of damages. (Id.) On August 18, 2011, the undersigned denied the Motion for Sanctions as follows:

> TEXT ORDER DENYING [46] Motion for Sanctions. This matter is before the Court on the counterclaimant's motion for sanctions. It contends that the counterdefendant has failed to participate in discovery or otherwise in the case, such that his responsive pleading should be struck and fees and costs awarded. The Court, however, would decline the counterclaimant's request for sanctions in an award of attorneys fees and costs at this time. It appears that this situation is essentially one of default rather than some extended delinquency in discovery obligations. The counterdefendant, although initially answering, has ultimately failed to "otherwise defend." Fed. R. Civ. P. 55(a); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011). Accordingly, the counterclaimant should move for an entry of default and for default judgment and hearing in accord with the Federal Rules of Civil Procedure. To the extent that either or both are ultimately granted, the Court will consider an award in sanction at that time. The Court does not mean to over-complicate the procedure but believes this is the more appropriate mechanism to dispose of the rump case.

(Dkt. No. 49.) Coyle thereafter requested an entry of default, which was entered by the Clerk on September 22, 2011. (See Dkt. No. 52; see also Dkt. No. 51.) On September 26, 2011, Coyle filed the instant Motion for Default Judgment. (Dkt. No. 54.) Coyle requested a hearing on damages because "this claim involves unliquidated damages." (Dkt. No. 54-1 at 2.) The Notice of Hearing on the Motion for Default Judgment was filed on March 2, 2012, noticing the instant hearing for March 26, 2012, at 11:00 A.M. (See Dkt. No. 56.) Fosberry received notice of this hearing. (See Dkt. No. 59; Dkt. No. 59-1.)

## **FINDINGS OF FACT**

As noted above, a default has been entered against Fosberry. (See Dkt. No. 52.) As a result of Fosberry's default, the undersigned accepts Coyle's well-pleaded factual allegations as true. See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)).

Defendant is in the business of selling, leasing, and servicing equipment used for copying documents, and much of its business "is for the purpose of selling, promoting, and leasing Konica Minolta copying products" in Georgia and South Carolina. (Am. Ans. & Counterclaims ¶¶ 33-34.) Plaintiff "was engaged in the same business as Coyle and owned or partially owned" Mardale Imaging Solutions ("Mardale") that "also sold, leased and serviced Konica Minolta equipment" in an area that generally included Beaufort County and other parts of lower South Carolina. (Id. ¶ 35.) In March of 2007, Fosberry contacted Coyle, reported that Mardale was deeply in debt and about to close its business, and "inquired as to whether Coyle was interested in purchasing its assets for $800,000, including the right to service its existing customers in the future." (Id. ¶ 36.) After an investigation, Coyle concluded that Mardale "was deeply in debt and essentially worthless" and that servicing the equipment for Mardale "would require a substantial investment." (Id. ¶ 37.)

3

Although Coyle informed Fosberry that it was not interested in purchasing Mardale, Coyle proposed hiring Fosberry and two other Mardale employees "with the primary responsibility of selling and servicing equipment that Mardale had previously sold and serviced, and to generate new business for Coyle principally in the region of lower South Carolina." (Id. ¶ 38.) The other two employees stated they had no interest in joining Coyle, but Coyle "entered into employment negotiations with Fosberry . . . based upon assurances and representations of Fosberry concerning the volume and quality of the business he would bring to Coyle." (Id. ¶¶ 39-40.) "Fosberry's representations to Coyle included assurances and representations that the accounts serviced by Mardale that could be assumed comprised 280 copying machines that produced revenues of $35,000 per month and would do so in the future." (Id. ¶ 41.) Coyle relied upon such representations–which it later learned were false–"when it offered employment to Fosberry on the negotiated terms; Coyle would not have done so had it known the falsity of such representations by Fosberry." (Id.) All of the terms of Fosberry's employment–including salary, commission, bonuses, and other benefits offered to Fosberry–were based upon the truth of such representations made by Fosberry during the negotiations between Fosberry and Coyle. (Id. ¶ 40.) The terms Coyle's oral employment contract with Fosberry were as follows:

> [I]n consideration for Fosberry bringing to Coyle 280 existing copying machines for the purpose of servicing, selling, and leasing and future maintenance that would produce for Coyle revenues of approximately $35,000 per month and other assurance, Coyle would:
>
> 1. pay Fosberry $4,000 per month;
>
> 2. pay Fosberry a commission of 60% of the gross profit of each sale of equipment made by him;
>
> 3. pay for Fosberry's cell phone expenses;
>
> 4. pay 50% of Fosberry's health insurance premiums of approximately $480 monthly;

4

> 5. pay Fosberry's monthly cost of gasoline used for business purposes;
>
> 6. agreed that Fosberry would begin working on May 1, 2007;
>
> 7. and agreed that Fosberry would work full time for Coyle and use his best efforts to perform his job in a competent manner.

(Id. ¶ 43.)

In June of 2007, less than two months after starting employment with Coyle, Fosberry asked Coyle for a $50,000 loan to cover personal expenses, including the cost of school tuition for his children and the purchase of automobiles for Fosberry and his wife. (Id. ¶ 44.) Coyle states that although it declined to loan Fosberry $50,000, Coyle made Fosberry a "payroll deductible loan of $7,000 for his children's tuition, and a loan to cover the costs of two automobiles for his use, the ownership of which would remain in Coyle, which was also payroll deductible over time." (Id. ¶ 45.) Two automobiles Coyle owned were delivered to Fosberry. (Id.)

During the time Fosberry was employed with Coyle (but before November 7, 2007), Coyle "discovered that the representations that had been made by Fosberry about the amount of business he would bring to Coyle and the amount of revenues he would produce, and upon which Coyle relied were altogether false . . . ." (Id. ¶ 46.) The number of copying machines was discovered to be only 153 (instead of the represented 280), and the revenue produced by Fosberry's Mardale customers was approximately $16,000 per month (instead of the represented $35,000). (Id.)

Sometime during the Fall of 2007–but no later than November 7, 2007–Fosberry "abandoned his job and disappeared." (Id. ¶ 47.) Fosberry refused to return Coyle's automobiles and failed to pay the outstanding loan for the cars as well as the outstanding loan for the tuition. (Id. ¶ 48.) Coyle had to institute claim and delivery proceedings in order

5

to recover the two vehicles, incurring "considerable legal and other expenses in so doing." (Id. ¶ 49.)

During the course of Fosberry's employment with Coyle, Fosberry failed and refused to appear for work in a timely or regular manner, which conduct resulted in losses to Coyle. (Id. ¶ 50.) Coyle paid Fosberry his salary up to and including November 7, 2007.[1] (Id. ¶ 51.)

## **ANALYSIS**

Having found the facts as set forth in Coyle's Counterclaims deemed admitted by default, the Court must ensure the Counterclaim sets forth claims as to which relief can be granted pursuant to the standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure. See generally GlobalSantaFe Corp. v. Globalsantafe.com, 250 F.Supp.2d 610, 612 n.3 (E.D.Va. 2003); see also Joe Hand Promotions, Inc. v. Scott's End Zone, Inc., 759 F. Supp. 2d 742, 747 (D.S.C. 2010). Such a ruling was made on September 7, 2010, when the Honorable Richard Gergel denied Fosberry's motion to dismiss. (See Dkt. No. 23.)

Coyle's counterclaims list the following causes of action against Fosberry: (a) breach of contract; (b) fraud in the inducement; (c) negligent misrepresentation; and (d) conversion. (See generally Dkt. No. 17.) At the hearing on March 26, 2012, Gregory T. Coyle ("Mr. Coyle"), president and part owner of Coyle Business Products, Inc., testified as to the damages suffered by Coyle as a result of Fosberry's breach of contract, fraud in the inducement, negligent misrepresentation, and conversion.

Mr. Coyle testified that Coyle suffered damages in the amount of $28,000 for salary payments to Fosberry wherein Fosberry performed no work for Coyle. This sum represents seven months of salary at $4,000 per month. Mr. Coyle testified that although Fosberry

---

[1]Fosberry refused to pick up his last paycheck, and Coyle did not send it to him because Coyle was unable to locate Fosberry. (Am. Ans. & Counterclaims ¶ 51.)

performed during his first month of employment with Coyle, Fosberry performed no work at all but instead simply "disappeared" during those seven months.

Mr. Coyle further testified that Coyle Business Products, Inc. suffered significant damages as a result of Fosberry's conversion of two automobiles belonging to Coyle. When Fosberry disappeared and failed to return the two vehicles to Coyle, Coyle instituted legal action in Berkeley County in order to recover the vehicles. After twelve months, the action was successful, and the vehicles were returned to Coyle. The payments on these vehicles made by Coyle during these twelve months totaled $10,141.92; the insurance on these vehicles during that time was $2,951.76. Attorneys' fees incurred to recover the vehicles was $12,316.64. Mr. Coyle testified that when Coyle finally recovered the vehicles, Coyle spent $2,054.39 to repair the vehicles, as Fosberry performed no maintenance on the vehicles during this twelve-month period. Finally, Mr. Coyle testified that Coyle entered into the four-year leases on these vehicles for Fosberry's benefit and that Coyle did not need these vehicles for its business. In addition to the one year of payments listed above, Coyle was also damaged in the amount of $30,425.76, which represents three years of lease payments that Coyle paid on the four year leases for vehicles Coyle did not need. The undersigned therefore recommends finding that Coyle suffered $57,890.47 in damages as a result of Fosberry's conversion and breach of contract with respect to the two vehicles.

Mr. Coyle further testified that, of the $7,000 loan Coyle gave to Fosberry for his children's tuition, $4,339.15 remained unpaid. In addition, Mr. Coyle testified that Coyle paid $1,872.53 on Fosberry's behalf for a cell phone.[2]

---

[2] Mr. Tisdale submitted an Affidavit indicating that Coyle had incurred $42,883.90 in attorneys' fees as a result of the instant action. Although it is clear that Mr. Fosberry's actions have necessitated this significant expenditure, "[u]nder the 'American Rule,' the parties to a lawsuit generally bear the responsibility of paying their own attorneys' fees." Layman v. State of S.C., 376 S.C. 434, 451, 658 S.E.2d 320, 329 (2008) (citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986)).

In light of the undisputed testimony at the hearing on March 26, 2012, the undersigned recommends finding that Coyle suffered a total of $134,986.05 in actual damages as follows:

| | |
|---|---|
| Damages related to vehicles: | $57,890.47 |
| Payment for Fosberry's cell phone: | $1,872.53 |
| Salary payments for work not performed: | $28,000.00 |
| Unpaid loan (tuition) | <u>$4,339.15</u> |
| Total actual damages | $92,102.15 |

Coyle has also asked for punitive damages, and at the hearing, Mr. Tisdale indicated Coyle was asking for punitive damages on the conversion and misrepresentation claim. "Punitive damages are recoverable in conversion cases if the defendant's acts have been willful, reckless, and/or committed with conscious indifference to the rights of others." Mackela v. Bentley, 365 S.C. 44, 49, 614 S.E.2d 648, 651 (Ct. App. 2005) (citing Oxford Fin. Cos., Inc. v. Burgess, 303 S.C. 534, 402 S.E.2d 480 (1991)). In the case *sub judice*, the undersigned concludes that Fosberry's actions were willful and committed with conscious indifference to Coyle's rights and therefore recommends awarding punitive damages to Coyle. Fosberry knew the vehicles belonged to Coyle, yet he refused to return them to the rightful owner for a significant period of time: one year. Moreover, Coyle was forced to institute legal action against Fosberry simply to reclaim what rightly belonged to it. Fosberry's ability to pay is likely limited; his business had a significant debt load prior to his employment with Coyle, and he borrowed funds from Coyle to pay for his children's tuition. However, given Fosberry's significant degree of culpability, the long duration of his conduct,

---

Although there are some exceptions to that rule, none of the exceptions apply to the case *sub judice*. See Jackson v. Speed, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997) ("Attorney's fees are not recoverable unless authorized by contract or statute.").

his awareness that the vehicles belonged to Coyle, the likelihood the award will deter Fosberry and others from similar conduct, the relationship between the conduct and the harm reasonably related to it, and Fosberry's ability to pay, the undersigned recommends awarding punitive damages in the amount of $25,000.00. See Gamble v. Stevenson, 305 S.C. 104, 111-12, 406 S.E.2d 350, 354 (1991). The undersigned therefore recommends that the District Judge award Coyle $25,000.00 in punitive damages, and that the total amount awarded to Coyle be $117,102.15 (actual damages of $92,102.15 plus punitive damages in the amount of $25,000.00).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Coyle's Motion for Default Judgment (Dkt. No. 54) be GRANTED. It is RECOMMENDED that judgment be entered against Marty Fosberry in favor of Coyle Business Products, Inc. in the amount of One Hundred Seventeen Thousand One Hundred Two and 15/100 dollars ($117,102.15). This amount includes actual damages in the amount of $92,102.15 and punitive damages in the amount of $25,000.00.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Marty Fosberry at his last known address.

IT IS SO RECOMMENDED.

                                              s/Bruce Howe Hendricks
                                              United States Magistrate Judge

March 29, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).